IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| MELANIE FAIZER, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| v. | ) | No.: 3:24-cv-190-TAV-DCP |
| | ) | |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
|    Defendant, | ) | |
| | ) | |
|    and | ) | |
| | ) | |
| CARPENTER CREEK LLC, | ) | |
| | ) | |
|    Movant/Proposed Intervenor. | ) | |

**REPLY IN SUPPORT OF
CARPENTER CREEK LLC'S
<u>MOTION TO INTERVENE</u>**

Proposed intervenor Carpenter Creek LLC ("Carpenter") replies in support of its Motion to Intervene in Ms. Melanie Faizer's ("Faizer" or "Plaintiff") appeal of the Tennessee Valley Authority's ("TVA") decision to withhold Carpenter's sensitive commercial information.

## INTRODUCTION

Plaintiff's Opposition ("Opp.") challenges a single element of the mandatory intervention analysis: adequacy of representation. Her sole argument is that Carpenter cannot rebut the presumption of adequate representation that arises when parties "share the same objective." Opp. at 2, 4, 8-12. This fails for numerous reasons.

*First*, Plaintiff focuses on facts showing that TVA and Carpenter are aligned, such as the fact that their answers are similar, and that both have proffered Exemption 4. *Id.* Circularity aside, these superficial indicia of aligned goals at best trigger the presumption, but fail to get at whether it can be rebutted. Plaintiff's total failure to address the substantive differences in interest and incentives between TVA and Carpenter is sufficient to permit intervention.

*Second*, Plaintiff elides a rigorous "adequate representation" analysis because, in this circuit, the burden for overcoming the presumption is a "minimal" one, and "it is sufficient to prove that representation *may* be inadequate." *NE. Ohio Coal. for Homeless and Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006) (emphasis original).

Here, there are many reasons to find that representation "*may be* inadequate." *Id.* For example, TVA has affirmatively stated it cannot represent Carpenter, and the Sixth Circuit has made clear in the intervention setting that there is "no reason to second guess that concession." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, Michigan*, 41 F.4th 767, 775 (6th Cir. 2022) ("*Wineries*").

Moreover, because the redacted materials are *Carpenter's* confidential information, it is *Carpenter* who knows why they should be kept confidential. And the nature of FOIA litigation

means TVA (a corporate agency instrumentality of the United States) has fundamentally different interests from a private party like Carpenter. Federal courts have routinely found these facts sufficient to overcome the presumption of adequate representation.

Plaintiff's arguments against permissive intervention also fail. It hinges on inapposite cases where: (i) intervention is made after many years of litigation; (ii) intervention would prejudice the parties by either upsetting a settlement or encourage hundreds of other similarly situated intervenors to intervene; or (iii) the proposed intervenor would essentially step into a defendant's shoes and lead to duplication and waste. None is present here.

Lastly, Plaintiff's invitation to the Court to formally grant Carpenter's intervention in name while denying it the ability to present its case is unsupported and should be rejected.

## ARGUMENT

### I. TVA Cannot Adequately Represent Carpenter's Interests In FOIA Exemption 4.

#### A. The Burden To Rebut The Presumption Of Adequate Representation Is "Minimal".

In the Sixth Circuit, the intervenor faces a "minimal burden" to rebut the presumption of adequate representation by a party sharing the same ultimate objective. *Wineries*, at 774 ("that presumption may be overcome ... if the applicant shows that that representation of his interest '*may be*' inadequate; and the burden of making this showing should be treated as minimal.") (emphasis original).

#### B. Carpenter Can Easily Fulfill Its "Minimal" Burden To Rebut The Presumption Of Adequate Representation.

To ascertain whether the "minimal" burden is met, courts consider various factors, any one of which may be dispositive.

***First***, where a government entity has conceded its inability to represent a private party, the Sixth Circuit does not "second guess that concession." *Wineries*, at 775 (noting that

"[n]umerous cases from other circuits dealing with the interest of governmental entities in similar contexts underscore the significance of the [government]'s concession.") (collecting cases). Here, TVA's August 16 notice of non-opposition concedes that it "cannot adequately represent Carpenter's specific interests regarding confidential commercial information that Carpenter owns, nor can TVA adequately represent the harm to Carpenter from disclosure of such information." Doc. 26 at #176. This is dispositive, standing alone.[1]

**Second**, to rebut the presumption, "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).

Here, Plaintiff claims that because TVA has asserted Exemption 4 as a basis for the challenged redactions, then its arguments will be "wholly indistinguishable" from Carpenter's Opp. 6-7.[2] This misses the point: just because TVA has redacted Carpenter's confidential

---

[1] In a footnote, Plaintiff ventures that in other circuits, another presumption of adequate representation applies where the government is the existing party. Opp. fn. 5. But, as *Wineries* makes clear and as Plaintiff concedes, that is not the law in the Sixth Circuit. Nor are any of Plaintiff's cases on this issue apposite. *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561-63 (1st Cir. 2021) is a non-FOIA case where both the proposed intervenors and the government are defending the *same* public interests in a constitutional challenge to government regulations with no private commercial interests involved; *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998) is a non-FOIA case where the intervenors and governments sought to defend the *same* public interests in defending a decision to inject retail competition into a local electric utility market, without propounding any legal arguments that the government defendants were unable or unwilling to make; *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) is a non-FOIA case where the intervenors sought to join a government defendant who was charged by law to protect the intervenors' interests to defend a decision granting the intervenors certain benefits; *United States v. Hartford-Empire Co.*, 573 F.2d 1, 2 (6th Cir. 1978) is an antitrust case where the intervenors and government plaintiff were defending the *same* public interests in competition; *Winery v. Wilcher*, 2006 WL 8449122, at *9 (W.D. Ky. 2006) is a non-FOIA case where the intervenors and governments are defending the *same* public interests arising from the validity of a statute.

[2] Plaintiff argues that TVA's and Carpenter's answers are similar. Opp. at 5. But this is irrelevant because these merely respond to Plaintiff's generalized notice pleadings, which do not specifically address the application of Exemption 4.

information at Carpenter's request under Exemption 4, does not mean it has any ability to substantiate what *makes* the confidential information confidential—only Carpenter can.

As the Supreme Court recently held in the Exemption 4 context, "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner [*i.e.* Carpenter] and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

Here, TVA can only tell the Court whether the information was "provided to the government under an assurance of privacy", but does not know whether or how Carpenter "customarily and actually treated [the information] as private." Doc. 26 at #176. TVA itself put this dichotomy best. As it stated: "TVA's assertion of Exemption 4 relied upon the good faith objection to disclosure provided by Carpenter," not its own knowledge about the underlying information. *Id.* In other words, TVA's reason for urging Exemption 4 is its assurance of privacy to Carpenter, whereas Carpenter's reasons for urging Exemption 4 are what makes the redacted information *its* confidential information. These reasons will comprise the "separate arguments unique to" Carpenter that Plaintiff's own lead case identified as sufficient to establish inadequate representation. *United States v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005).[3]

Because TVA's arguments for Exemption 4 are different from Carpenter's, intervention is warranted under *Miller*, 103 F.3d at 1247. Indeed, because *only* Carpenter can explain what makes its information confidential, Carpenter "is uniquely well-positioned to explain the

---

[3] Plaintiff also argues that because TVA credited Carpenter's assertion of Exemption 4 to make certain redactions, then TVA is somehow Carpenter's "proxy." Opp. at 7. A proxy is "the act or practice of a person serving . . . as an authorized agent or substitute for another." *In re Bunting,* 2013 WL 396255, at *2 (E.D. Mich. Feb. 1, 2013). Here, TVA has not consented to acting as Carpenter's proxy. Doc. 26, at #176 ("TVA does not act on behalf of and does not serve as a proxy for any submitter of business information, including Carpenter."). Nor has Carpenter ever given authority for TVA to be its proxy.

commercial significance of the documents at issue here," without which "the existing parties may not represent [its] interests adequately." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021) (concluding that the private intervenor's "knowledge about the confidentiality and commercial nature of its records" is "important" to "litigate the scope and application of Exemption 4 ... on summary judgment.") (cleaned up).

**Third**, aware that TVA has no idea what makes Carpenter's information confidential, Plaintiff relies on an out-of-circuit non-FOIA case to argue that Carpenter can simply "give Defendants access to the information it believes is relevant" for TVA to make an argument. Opp. at 8. (citing *Isaacson v. Brnovich*, 2021 WL 5449086, at *2 (D. Ariz. Nov. 22, 2021)). In *Isaacson*, a nonprofit sought intervention to express the views of individuals suffering from a particular genetic defect, which views were already "subsumed within [the Arizona government's] broader interests" of "defending all individuals born with genetic abnormalities" affected by "the enactments of the Arizona legislature." *Isaacson*, 2021 WL 5449086, at *1.

This case presents the opposite situation. Carpenter's interest in protecting its confidential information is not "subsumed" within any interest TVA might have, which are at best contractual, not business based. Doc. 26, at #176 ("Carpenter ... submitted that information to TVA under the assurance of privacy" and provided a "good faith objection to disclosure" on which TVA premised its Exemption 4-based redactions). Indeed, TVA is an arms-length business counterparty to Carpenter under a fixed-term contract that Carpenter (as TVA's customer) would have to renegotiate with TVA upon renewal. As such, Carpenter cannot simply give TVA "access" to its business data, but must rather make its own, carefully considered submissions to avoid undermining its business interests.

5

Finally, no Sixth Circuit law provides that the "minimal burden" can be turned into an absolute bar where an intervenor may be able to pass arguments to an existing party. Such an exception would also swallow the rule. Instead, as the Sixth Circuit recently held when allowing the intervention of a private party already represented by its local township, "although there may be *some* overlapping interests between [intervenor] and the Township, the Township is not necessarily able to represent the specific interest of [intervenor] in this lawsuit and intervention by right is appropriate." *Wineries*, at 775. Here, as set forth above, TVA's specific interest is merely to defend its FOIA response, whereas Carpenter must protect its confidential information.

***Fourth***, the inability of the government party to represent the interests of their commercial counterparties in the FOIA Exemption 4 setting has been repeatedly recognized. *See S. Env't L. Ctr. v. Tennessee Valley Auth.*, 659 F. Supp. 3d 902, 906 (E.D. Tenn. 2023) (allowing TVA's business counterparties to intervene and make arguments under Exemption 4 to protect "confidential commercial or financial information the release of which would cause Intervenor-Defendants foreseeable harm."); *see also Pub. Citizen Health Rsch. Grp. v. Nat'l Institutes of Health*, 209 F. Supp. 2d 37, 48 (D.D.C. 2002) (allowing intervention under same procedural posture where the government agency defendant and proposed intervenor are counterparties in licensing agreements); *see also Varnum LLP v. United States Dep't of Labor,* 2021 WL 1387773 (W.D. Mich. 2021) (allowing intervenors to independently brief summary judgment concerning FOIA Exemption 4).[4]

---

[4] In another footnote, Plaintiff suggests that Carpenter has no "cognizable legal interest" in "TVA's assertion of Exemption 4." Opp. n. 6. But of course it does—*Carpenter's* confidential commercial and financial information are what's at stake here. Plaintiff also does not challenge factor 2 (substantial interest) or 3 (impairment to ability to protect that interest) of the mandatory intervention analysis, so Plaintiff's conclusory non-sequitur is simply not relevant.

6
Case 3:24-cv-00190-TAV-DCP    Document 27    Filed 08/20/24    Page 7 of 15    PageID #: 185

Indeed, inadequate representation is commonly found when Exemption 4 is implicated because "the nature of FOIA litigation is such that 'the government entity and the private intervenor will possess fundamentally different interests—the government is interested in fulfilling its FOIA obligations; the intervenor is interested in preventing disclosure of its confidential materials[.]'" *Gov't Accountability Project v. Food & Drug Admin.*, 181 F. Supp. 3d 94, 96 (D.D.C. 2015); (citation omitted); *see also 100Reporters LLC v. United States Dep't of Just.*, 307 F.R.D. 269, 279–80 (D.D.C. 2014) (same); *Appleton v. F.D.A.,* 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (same).

Glaringly, Plaintiff failed to respond to any of these federal FOIA-specific endorsements of Exemption 4-related intervention, which speaks volumes. *Cf.* Motion, at 5-7. As TVA itself explained, its interest "in defending the lawfulness of its FOIA response ... is qualitatively different than Carpenter's specific interest in protecting the information it owns." Doc. 26 at #176. To defend the lawfulness of its own actions, TVA only has to point to the fact that it acted according to its assurance of privacy to Carpenter. That, as set forth above, "may be" insufficient under recent Supreme Court law to sustain Exemption 4. *Wineries*, at 774; *cf. Argus Leader Media*, 588 U.S. at 440.

***Fifth***, Plaintiff argues that the possibility that TVA may not see this case through is irrelevant. Opp. at 10. But in this circuit, "a decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest." *Associated Builders and Contractors v. Perry*, 115 F.3d 386, 391 (6th Cir. 1997)

Here, TVA has no obligation to appeal if it loses on Exemption 4. And, a decision to not appeal may arise from TVA's own "sound litigation strategy and a prudent allocation of [TVA's funds], but this decision also further illustrates how the interests of [TVA] and of [Carpenter]

7

diverge." *Miller*, 103 F.3d, at 1248. Indeed, even before a merits decision, TVA "remains free to change its strategy during the course of litigation", "such as a decision to release a specific category of materials." *100Reporters LLC*, 307 F.R.D. at 279–80. And "[t]he adequacy of representation can change during a lawsuit depending on the representative party's underlying incentives for litigating the case." *Wineries*, at 776.

Should either situation occur, Carpenter would have to intervene. In an appellate context, it would have to do so with an incomplete record. *See Argus Leader Media*, 588 U.S. at 436 ("[t]he [United States Department of Agriculture] declined to appeal" an Exemption 4 decision, so "Petitioner Food Marketing Institute, a trade association representing grocery retailers" "successfully moved to intervene under Federal Rule of Civil Procedure 24(a) and then filed its own appeal."). This would both be detrimental to the interests Carpenter is seeking to protect now and would also not conserve judicial resources.

Against all of these above differences in interests, incentives, and arguments, Plaintiff asserts that the "sole difference" between Carpenter and TVA is Exemption 5 and argues that "[Carpenter] has no even arguable legal basis to seek to intervene in order to defend TVA's withholding of information on the basis of Exemption 5." Opp. at 5. But Carpenter has no interest (or ability) to propound Exemption 5 and is not intervening on this basis because the deliberative privilege belongs solely to the government. As such, Plaintiff's non-substantive red herring is a distraction from the "real focus of our analysis," which is "not on *what* the [TVA] has done, but *why* it is doing it." *Wineries*, at 776.

As set forth above, TVA has only applied Exemption 4 at Carpenter's request, the Court should now afford Carpenter—the only party capable of explaining why Exemption 4 substantively applies—an opportunity to explain its reasons for asking the TVA to do so.

## C. Neither Of Plaintiff's Main Cases Are On Point.

While Plaintiff does agree that the proposed intervenors and parties' interests only need to be "different" as opposed to "wholly adverse," it claims Carpenter "does not possess unique interests" simply because TVA and Carpenter seek "identical relief." Opp. at 9-10 (citing *United States v. Michigan*, 424 F.3d 438 (6th Cir. 2005) and *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 374 (6th Cir. 2014)). Setting aside the fact that this argument would preclude a finding of inadequate representation in all cases were parties share the same goals, Plaintiff's cases in support of this proposition illustrate why Plaintiff is wrong.

In *Michigan*, private property owners sought to intervene as defendants to help the state of Michigan procure declarative judgment that the plaintiff native tribes did not possess rights to "hunt and fish" outside a lake. *Michigan*, 424 F.3d at 444. The court declined intervention because "[r]ather than identifying any weakness in the state's representation," "the proposed intervenors seem more concerned about" "management and regulatory issues" that would only occur in the future. *Id*. As it made clear, the court's "decision [to deny intervention] was largely dependent on the fact that the court had bifurcated the case into two phases" and the state's representation was adequate "during the first phase", whereas the intervenors' concerns in the second phase "are not now, and possibly never will be, before the district court." *Id.*

Here, Carpenter's concerns are merits-related and squarely before the court. In any event, unlike the State of Michigan, TVA "may not" cover all the "separate arguments unique to [Carpenter] that [Carpenter] would like to make." *Id.*

*Reliastar Life Ins. Co.* is also inapposite. There, two banks sought to intervene as defendants to help an insured "defeat the [plaintiff] insurers' attempt to rescind the policies", so as to guarantee "any proceeds of the policies [paid to defendant] may ultimately flow to the [intervenor] banks." 565 F. App'x, at 372-374.

9

But the Sixth Circuit held that, in the debt collection context, "the 'circuits have generally concluded that a party may not intervene in support of a defendant solely to protect judgment funds that the party wishes to recover itself.'" *Id*. (citation omitted). Therefore, "[r]egardless of the fact that [the insured] and the banks may have different designs for the policy proceeds if the insurers ultimately are forced to pay upon the policies, their interests in the resolution of the pending declaratory judgment actions are exactly the same." *Id*.

This case is not a debt collection action where a potential judgment creditor is essentially seeking to step into the debtor's shoes and make completely identical arguments that serve the identical interests. This is a FOIA case where federal courts have been abundantly clear that "the nature of FOIA litigation is such that 'the government entity and the private intervenor will possess **fundamentally different interests** … .'" *Gov't Accountability Project,* 181 F. Supp. 3d at 94 (citation omitted, emphasis added); *see also 100Reporters LLC,* 307 F.R.D. at 279–80 (same); *Appleton,* 310 F. Supp. 2d at 194 (same).

## II.     Alternatively, This Court Should Grant Permissive Intervention.

None of the cases Plaintiff cites to oppose permissive intervention are availing.

In *United States v. Territory of Virgin Islands*, the Third Circuit denied permissive intervention because the proposed intervenor's motion (i) "[was] untimely" when made after the lawsuit has been going on for 28 years; (ii) would "prejudice the parties" because "the parties had reached a settlement only twelve days after Gillette's motion was fully briefed"; and (iii) would be "unnecessary given that the United States adequately represents his interests" "as an inmate at [the defendant correction facility], [and was] the 'exact constituent' the United States is attempting to protect in this case." 748 F.3d 514, 525 (3d Cir. 2014).

None of these facts are present here: Carpenter's intervention is timely, unprejudicial, and even TVA conceded that it cannot adequately represent Carpenter's interests.[5]

Likewise, the court in *Ark Encounter, LLC v. Stewar* concluded that permissive intervention would result in "duplication of the Defendants' efforts" because the proposed intervenors "do not identify how they would actually present different arguments that would contribute to the litigation in a way that would require intervention." 311 F.R.D. 414, 426 (E.D. Ky. 2015). In a similar vein, *Moore v. Johnson*, a constitutional challenge to an election statute, has no bearing here because there, "[d]efendants have [already] done a truly outstanding job of presenting the strongest possible arguments against Plaintiffs' request for relief" and the intervention would only result in "duplication of efforts." 2014 WL 2171097, at *3 (E.D. Mich. 2014). That is simply not the case here as set forth above.[6]

## III. This Court Should Not Impose Unwarranted Limitations On Carpenter's Ability To Make Arguments On Its Own Behalf.

Plaintiff cites a train of cases and asks the Court to grant Carpenter's intervention in name alone. *See* Opp. at 15. Its cases are inapposite.

In *Wildearth Guardians v. Salazar*, Plaintiff's first case, the court, "[m]indful of the divergence of the Intervenors' interests in this action" "decline[d] Plaintiffs' invitation to require the Intervenors to consolidate all motions, responsive filings, and briefs." 272 F.R.D. 4, 20

---

[5] Similarly, *Bay Mills Indian Cmty. v. Snyder*, is also inapposite because the intervention motion was made one day before "dispositive motion" was filed and after extensive litigation that has already occurred between existing parties for more than 5 years. 720 F. App'x 754, 759 (6th Cir. 2018).

[6] *Blount-Hill v. Bd. of Educ. of Ohio*, another constitutional challenge case cited by Plaintiff, is not applicable for the same reasons. 195 F. App'x 482, 487 (6th Cir. 2006). There, the Court concluded the intervention would result in "the duplication of the efforts" because "[the intervenor] has offered nothing to indicate that its contribution will add anything of unique value" and the intervention would cause "undue delay" because it would encourage "the joinder of 'every community school, proposed community school, and management company ... a finding [that] would raise the number of defendants to well over two hundred." *Id.* Neither concern is present here.

(D.D.C. 2010). Indeed, the *only* case Plaintiff cited that imposed such a restriction was: (i) out of circuit; and (ii) only did so because the intervenor "fail[ed] to identify any need for separate briefing as to any issue that may be raised by such motion," which is not the case here. *Ellis v. Bradbury*, 2013 WL 4777201, at *2–3 (N.D. Cal. Sep. 6, 2013).

Contrary to Plaintiff's urgings, Federal courts routinely afford an intervenor to file, move and brief independently a FOIA summary judgment proceeding. *See S. Env't L. Ctr. v. Tennessee Valley Auth.*, 659 F. Supp. 3d at 906 (allowing intervenors to make separate summary judgment motions concerning Exemption 4); *Pub. Citizen v. United States Dep't of Health & Hum. Servs.*, 66 F. Supp. 3d 196, 207 (D.D.C. 2014) (same); *Zirvi v. United States Nat'l Institutes of Health*, 2022 WL 1261591, at *1 (D.N.J. Apr. 28, 2022) (same); *Hodes v. United States Dep't of Treasury,* 342 F. Supp. 3d 166 (D.D.C. 2018) (same); *Physicians Comm. for Responsible Med. v. United States Dep't of Agric.,* 316 F. Supp. 3d 1 (D.D.C. 2018) (same).

The Court should afford Carpenter no less than what federal courts would customarily permit any regular FOIA intervenor.

**IV.    CONCLUSION**

For these above reasons, Carpenter is entitled to intervene under Rule 26(a), or should be permitted to do so pursuant to Rule 26(b).

| | |
|---|---|
| DATED: | August 20, 2024<br>Seattle, Washington |

MORROW NI LLP

_____
Angus F. Ni, Esq. (*Pro hac vice*)
Lawrence Yichu Yuan, Esq. (*Pro hac vice*)
502 Second Avenue, 14th Floor
Seattle, WA 98104
Tel: (773) 453-3223

Email: angus@moni.law
lawrence@moni.law

*Attorneys for Movant/Proposed Intervenor Carpenter Creek LLC*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

*s/Lawrence Yichu Yuan*
Attorney for Movant/Proposed Intervenor
Carpenter Creek LLC
